```
UNITED STATES DISTRICT COURT                              FILED
EASTERN DISTRICT OF NEW YORK                        IN CLERK'S OFFICE
                                                U.S. DISTRICT COURT E.D.N.Y.
---------------------------------------------------- X    ★ DEC 2 - 2009 ★

JOSE DELEON,                                        :    BROOKLYN OFFICE

                              Petitioner,           :    MEMORANDUM
                    - against -                     :    DECISION AND ORDER

JOHN LEMPKE, Spt., Five Points Correctional         :    09 Civ. 2310 (BMC)
Facility,
                                                    :
                              Respondent.           :
                                                    :
                                                    :
---------------------------------------------------- X
```

**COGAN, District Judge.**

The sole claim of error in this habeas corpus proceeding under 28 U.S.C. §2254(d) is that the state trial court should have given a "justification" charge to the jury in petitioner's murder trial. The Appellate Division held that no reasonable view of the evidence at trial supported a justification charge,[1] and my task is to determine whether that ruling was contrary to or an unreasonable application of Supreme Court authority. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). I hold that New York law did not require a justification charge on the trial record, and thus the standard for habeas corpus relief has not been met.

## BACKGROUND

Petitioner was convicted of second degree manslaughter and third degree weapons possession. His conviction arose out of an internecine gun battle between members of the Crips street gang and a dissident faction of that gang. The altercation started as a verbal exchange in a club in Brooklyn when petitioner, a member of the dissident Crips group, defended a member of

---

[1] Petitioner was denied leave to appeal to the Court of Appeals.

another rival gang, the Bloods, to fellow Crips members. The incident escalated and the shooting began when the club closed and the rival camps of the gang spilled out into the street, which was filled with dozens of bystanders. When the shooting stopped, four people had been wounded, and one of them, Bryant Arnold, died. Petitioner was charged with second degree murder and related counts based on witness testimony that he had repeatedly fired his gun at a person or persons during the melee; the jury convicted on the lesser charges described above.

There was no real dispute that petitioner was the second in command of one of the rival Crips factions. The primary witness against him was Jamal Anthony, who, on the night in question, was a member of a different Crips faction. On direct examination, Anthony described hearing someone in the crowd on the sidewalk across from the club deliver a challenge ("who the … you yelling at?"). He then saw petitioner step out from the group surrounding him in the street, brandishing a gun. Someone fired a shot, and according to Anthony, petitioner then also fired, hitting an individual in the area of where the first shot had been fired. More shooting erupted and Anthony ran away. Anthony testified that the street lights were on and that nothing obstructed his view of defendant pulling his gun out from his waistband before any shots were fired.

In addition to Anthony, the prosecution introduced a statement to the police by another eyewitness, Leslie Gabriel. The trial court permitted a Detective to read Gabriel's statement based on the trial court's finding after a hearing that petitioner had succeeded in intimidating Gabriel, causing him to refuse to testify. (Petitioner did not challenge this ruling in the Appellate Division and does not challenge it here.) Gabriel, whose step-parents owned the club, said in his statement that petitioner would smuggle his gun into the club by hiding it in the equipment of a DJ who was a fellow gang member. Gabriel also stated that petitioner had shown him his semi-

automatic handgun the day before the shooting. On the night of the incident, Gabriel left the club after it closed, coming back about 10 minutes later. When he returned, the gun fight was already in progress; Gabriel saw petitioner and Reginald Purvis, head of one of the rival factions, engaged in a running gun battle down the street, shooting at each other. He also observed a third person firing.

Besides ballistics testimony, the prosecution introduced petitioner's statement to the police. Petitioner admitted going outside of the club to settle the verbal dispute physically, and then beating the head of the rival faction leader with his fists outside the club, but insisted that he returned to the club thereafter. The shooting started when he next left the club, and petitioner stated that he hid behind a tree. When the Detective who was interrogating petitioner showed him a picture of that tree and told him that shell casings had been found on the ground next to it, petitioner responded that someone, who he could not identify, had been standing next to him, shooting.

## DISCUSSION

In <u>Jackson v. Edwards</u>, 404 F.3d 612, 621 (2d Cir. 2005), the Second Circuit set forth the methodology for analyzing habeas corpus claims arising from the failure to give a requested justification charge: "First, was he entitled to a justification charge? Second, if so, did the failure to give one result in a denial of due process? Third, if so, did the state court's contrary conclusion constitute an unreasonable application of clear Supreme Court law?" I hold that New York law did not entitle petitioner to a justification charge, and thus I need not reach the latter two questions.

The parties essentially agree on the standard for determining a defendant's entitlement to a justification charge under New York Penal Law §35.15 and it is thoroughly explained in

Jackson, 404 F.3d at 621-24, and its progeny, e.g., Jones v. Poole, No. 07 Civ. 6587, 2009 WL 2633669 (S.D.N.Y. Aug. 26, 2009). There are several fundamental principles from those cases that apply to the instant case. First, the facts must be viewed in the light most favorable to the defendant. See Jackson, 404 F.3d at 622. Second, that view of the facts must support both a subjective and objective inference that deadly force is necessary to respond to the use or imminent use of deadly force by another, i.e., they must allow an inference that the defendant actually believed deadly force was necessary, and that a reasonable person would also have believed such force was necessary. Id. at 623. Third, the defendant has a duty to retreat if he can do so safely. Id. Fourth, a defendant who is the initial aggressor cannot claim the justification defense. See McCarthy v. Phillips, No. 04 CV 3545, 2009 WL 3204660 (E.D.N.Y. Sept. 30, 2009).

Even viewed in the light most favorable to petitioner, the record does not support a justification charge. As detailed below, the only way that the jury could have reached a conclusion that petitioner was justified would have been by speculation.

First, the only reasonable inference from the record is that petitioner had his gun drawn first, before anyone else drew theirs and before the shooting started. This makes him the initial aggressor under New York law, depriving him of the right to a justification defense. See People v. Holden, 260 A.D.2d 233, 689 N.Y.S.2d 40 (1st Dep't 1999). A person who draws a gun during a heated argument can produce two responses – either he intimidates his adversary to back down, or he provokes his adversary into responding in kind. Either way, the person's next action is not entitled to a justification defense under New York law.

Anthony's testimony on this point was clear – the first gun he saw was that of petitioner. Petitioner contends that some other or others "may" have had their guns drawn first, but there is
4

no record citation for that and I can find nothing to support it.[2] A justification instruction is obviously not required if a jury would have to speculate to find that the defense is valid. See People v. Alston, 104 A.D.2d 653, 480 N.Y.S.2d 115 (2d Dep't 1984). And while it is true that no one asked Anthony at trial, "did you see anyone with their gun out prior to petitioner," the inference is clear that Anthony did not, and there was no evidence that anyone else did.

Second, even at this late stage, petitioner has never presented a coherent theory of who he was trying to protect or what he was trying to achieve by shooting. He certainly was not trying to protect himself, as there is no evidence that anyone was shooting at him, other than his running gun battle with Purvis. I suppose, giving him the benefit of every doubt, that he was arguably shooting to defend some other co-faction member. But reaching that conclusion would be wholly speculative, especially in light of the unanswered evidence showing his live exchange with Purvis. See McCarthy, 2009 WL 3204660, at *12 ("no reasonable juror could have concluded ... that petitioner's firing into the car, much less repeatedly at [the assailant] during the ensuing chase, was necessary in [the third party's] defense."); Robinson v. Greene, 507 F. Supp. 2d 279, 293 (W.D.N.Y. 2007) (justification defense "would have required the jury to speculate as to a sequence of events unsupported by any direct evidence, to disregard materially undisputed evidence, and to draw tenuous inferences.").

Moreover, the mere fact that someone fired a shot or two before petitioner did, but after petitioner had displayed his gun, could not support a jury's finding that petitioner reasonably

---

[2] The closest petitioner comes to discrediting Anthony's testimony is in citing to an exchange on re-cross examination at trial when Anthony answered "[y]es" to the following compound and convoluted question: "The guy who had shot – taken his gun out before you saw Chino [DeLeon] with his gun, right?"

Taken in its proper context among counsel's line of questioning, the query concerns Anthony's previous grand jury testimony about the identity of the shooter he saw, not the order of drawing weapons he observed. Given this context and the confused nature of the colloquy, a reasonable jury would still have to speculate on the sequence of events and draw extremely tenuous inferences to find a justification defense valid based on this testimony. This is particularly true since Anthony's testimony on the first gun he saw is so clear.

believed that deadly force was necessary or that a reasonable person would have so believed. In essence, petitioner's argument devolves into the contention that whenever shots are fired in the street, a bystander is justified in returning fire in the general direction of the shooter just in case the shooter might otherwise hit the person at whom he is shooting. The catastrophic implications of such a principle in an urban setting are too obvious to state.

Third, the record does not permit the conclusion that petitioner was unable to escape. Petitioner asserts that it is the District Attorney's burden to show that he had a viable escape path, and I accept that as accurate, see People v. Rodriguez, 111 A.D.2d 879, 490 N.Y.S.2d 273 (2d Dep't 1985), but I think the District Attorney at least met its burden of going forward on this issue, and there was no contradictory evidence. Indeed, the ability to escape was almost self-evident on this record – this was a public street. Petitioner asserts that there was no evidence that at 4 a.m., when the battle took place, any buildings were open into which petitioner could have retreated, but enclosed buildings are not the only, and may not even be the best, escape route, as one may be pursued and confined in a building. Petitioner could have just withdrawn behind a building or away from the gunfire to a different street.

This was not a situation where petitioner stood face to face with an assailant or otherwise faced a kill-or-be-killed scenario. When the shooting started, the record shows that the dozens of people on the street demonstrated one of two responses – some ran away, and some took positions and engaged in a firefight. Petitioner chose the latter group.

The cases in which the Second Circuit has found error for failing to give a justification charge were based on much stronger evidence of the defense. In Jackson v. Edwards, the record allowed the inference that the petitioner, a building superintendent, was violently assaulted and knocked to the ground by a heavily inebriated person who was supported by a hostile and also

6

inebriated crowd inside the confined hallway of a building, and who was trying to steal keys to an apartment from him. 404 F.3d at 624. There was no issue of retreat because New York law does not require it with regard to someone who confronts a burglar or robber, see N.Y. Penal Law §§ 3515(2)(b), 35.20(3), and the Second Circuit held that a justification charge should have been given. Jackson, 404 F.3d at 624. Similarly, in Davis v. Strack, 270 F.3d 111 (2d Cir. 2001), the petitioner had been previously robbed three times at gunpoint and raped by a 435-pound assailant, who told the petitioner that he would kill him the next time he saw him. When the assailant, who was known to the petitioner to be usually armed, confronted the petitioner on the street, telling his companion that "there is something I have to take care of," and "I have to hit this guy off," and reached for his waistband, the petitioner turned and fired as he ran away so he would not be shot in the back. Again, the Second Circuit found the instruction should have been given. Id. at 130-31.

There is nothing like either of these cases here. This was a street gun battle in which petitioner was an active participant. The requirements for a justification defense were not met. Although it is sometimes the case, given that a defendant has no obligation to introduce evidence, that the evidence introduced by the prosecution will itself warrant a justification instruction, here, it did not, and nothing petitioner offered at trial filled the logical gaps that would be required to warrant such a charge.

## CONCLUSION

The application for habeas corpus relief is denied, and the petition is dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be

taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917 (1962).

**SO ORDERED.**

/s/(BMC)
_____
U.S.D.J.

Dated: Brooklyn, New York
December 1, 2009